DAMOORGIAN, J.
Samuel Dawson appeals the trial court’s order adjudicating him guilty of first degree murder with a firearm, sale of cocaine, and shooting into an occupied vehicle. He also appeals, his sentence of life in prison without the possibility of parole or early release. We affirm.
Dawson’s conviction and appeal arise from a drug deal gone wrong. Dawson sold drugs to the victim alongside the victim’s vehicle. When the victim attempted to drive off without paying, Dawson reached into the victim’s vehicle and grabbed the victim’s gold necklace. To avoid being dragged by the vehicle as it drove off, Dawson let go of the necklace. Dawson then shot the victim in the head and fled the scene.
During the police investigation of the victim’s murder, Dawson was a person of interest, but was not arrested immediately. An individual (“the informant”), who had learned of the police investigation and was facing unrelated charges himself, offered to wear a wire to record a conversation between himself and Dawson in the hope of receiving favorable treatment in exchange for his cooperation. The police made no promises to the informant. The informant’s efforts proved fruitful and yielded a taped conversation in which Dawson admitted to committing the murder and described the event in detail. At trial, the recorded conversation was admitted in evidence over defense counsel’s objection, and Dawson was convicted.
We write briefly to address Dawson’s points on appeal. Dawson first argues that the recorded conversation should *843 have been excluded from evidence because the informant did not testify at trial that he consented to being recorded. This argument is without merit. See State v. Welker, 536 So.2d 1017, 1020 (Fla.1988) (“There is nothing in chapter 934 pertaining to security of communications which suggests that the consent must be proven only by the testimony of the consenting party.... [T]he deputy’s testimony that [the informant] consented to the intercept sufficed to permit the introduction of the tape recordings.”); see also § 934.03(2)(c), Fla. Stat. (2006).
Dawson’s second argument, that the trial court erred in denying his motion for judgment of acquittal, appears to be premised on our agreeing that the trial court erred in admitting the recorded conversation. With the recorded conversation properly in evidence, however, there was sufficient evidence for a jury to conclude that Dawson was guilty of all the crimes for which he was convicted. See Pagan v. State, 830 So.2d 792, 803 (Fla.2002) (“If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction.”).
Similarly, Dawson claims that the trial court erred in giving the felony murder instruction because there was no evidence of the underlying felonies of attempted robbery or attempted burglary. However, “the underlying felony need not actually be charged to support a felony murder conviction.” Rivera v. State, 717 So.2d 477, 487 (Fla.1998). Indeed, “in a felony murder case, the corpus delicti is the fact of death through criminal agency, and proof of the underlying felony is not required.” Foster v. State, 886 So.2d 1037, 1038 (Fla. 4th DCA 2004).
Given the substantial competent evidence in the record to support the jury instruction, we cannot say that the trial court abused its discretion in giving the felony murder instruction. See Newman v. State, 976 So.2d 76, 78 (Fla. 4th DCA 2008). For example, in the recorded conversation, Dawson told the informant that he grabbed the victim’s necklace when the victim put the car in gear and told the victim, “give it up.” The recording also revealed that Dawson let go of the necklace only so he would not be dragged by the victim’s vehicle as the victim drove away. This evidence is sufficient to support giving an instruction for attempted robbery as the underlying felony. See § 812.13(1), Fla. Stat. (2006) (defining robbery as the “taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear”). Additionally, a firearms examiner testified that Dawson’s arm had to be inside the victim’s vehicle when the shot was fired for the bullet casing to end up in the backseat. This testimony, in conjunction with Dawson’s telling the victim to “give it up,” supports the trial court’s decision to give an instruction for the underlying felony of attempted burglary. See § 810.02(l)(b)l, Fla. Stat. (2006) (defining burglary as “[e]ntering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter”).
Finally, Dawson argues that the trial court sentenced him as a prison releasee re-offender (“PRR”) for the first degree murder with a firearm conviction, and that this sentence is in error because the State did not prove that Dawson qualified as a *844 PRR. From our review of the record, it is clear that Dawson was not sentenced as a PRR. At sentencing, the State informed the trial court that it was not going to proceed on the PRR status, and the trial court stated that pursuing such a status would make no difference as to the conviction for first degree murder with a firearm. Indeed, section 775.082(1), Florida Statutes (2006), requires a mandatory minimum of life imprisonment without eligibility for parole for a capital felony. With respect to Dawson’s other arguments on appeal, we find that no error occurred.

Affirmed.

MAY and CIKLIN, JJ., concur.